William Jack, surviving partner of Gardner, Morrow & Company, in right of said firm, for use of John Cree, Assignee of said firm, in trust for benefit of creditors, Appellant, *v.* J. King McLanahan and John Manning, who, with Thomas H. Lewis and Anthony S. Morrow, now deceased, were late copartners under the firm-name and style of the Ætna Mining Company ; and James W. Lewis and Mary Lewis, administrators of the said Thomas H. Lewis, deceased, and D. Howard Crawford, administrator of the said Anthony S. Morrow, deceased.

*Partnership—Liquidating partner—Authority of liquidating partner to toll the statute.*

After the dissolution of a partnership, one partner cannot toll the running of the statute of limitations, as against the other partners, by an acknowledgment of the debt, unless he has been appointed by them a liquidating partner, or has been authorized, either expressly or by implication, to do so for them, or acts as such liquidating partner, with their knowledge.

The power of one partner to bind another, after dissolution, either by an express or implied promise, is exceptional. If the facts which give rise to it do not appear in any case the power does not exist, and the general rule of nonliability is applied and controls.

*Partnership—Liquidating partner member of two liquidating firms.*

The power of a liquidating partner to bind his copartners has its foundation in the authority given him, either expressly or by implication, to act for them in the settlement of partnership affairs ; and the fact that the liquidating member of the defendant firm is also a member of plaintiff firm will not exclude evidence of his acts to bind the defendants, although

it may subject his acts to closer scrutiny, and be a reason for holding the plaintiff to a stricter degree of proof where the acts of the partner common to both firms are set up as a bar to the statute of limitations.

*Partnership—Liquidating partner.*

The authority to act as a liquidating partner does not require any express or specific appointment. If one so acts with the knowledge of his late copartners their permission may be presumed, and as to third persons, they may be bound.

*Partnership—Dissolution—Liquidating partner—Authority to bind firm —Judgment non obstante veredicto.*

In an action by a bank against the members of a firm, after dissolution to recover the amount of an overdrawn bank account, it appeared that the firm was dissolved in 1887 ; in 1892, the treasurer of the firm collected an account belonging to it, and in 1895 deposited it on the firm's account with plaintiff, in which he was a stockholder. This was in the line of his duties before dissolution, but there was no evidence that the other partners knew of this deposit, or that the account was overdrawn. The treasurer also drew a number of checks after the dissolution, but this had not been in line with his duties, and it was not shown that the other partners knew of it. After dissolution, the other partners had made a demand on the treasurer for an accounting ; but he had kept all the accounts before dissolution, and the demand had no special reference to his actions after dissolution. The other partners authorized him to pay a judgment against the firm, but they supposed he had firm funds with which to pay it. *Held,* that on the issue whether the treasurer was a liquidating partner, and, as such, could bind the firm by the deposit so as to toll the statute of limitations, it was not error to render judgment for defendants non obstante veredicto, such right having been reserved when the case was submitted to the jury.

Argued April 18, 1899. Appeal, No. 144, Jan. T., 1899, by plaintiff, from judgment of C. P. Blair County, March Term, 1897, No. 17, on verdict for defendants non obstante veredicto. Before STERRETT, C. J., McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Assumpsit. Before BARKER, P. J., of the 47th judicial district, specially presiding.

It appears from the evidence that this was an action of assumpsit brought by the surviving partner of the banking firm of Gardner, Morrow & Company, for the use of the assignee of the said plaintiff firm, to recover from defendant firm the amount of $32,709.65, the amount of overdrafts made by defendant firm on plaintiff's bank. The question turned on whether the

debt had been barred by the statute of limitations or had been tolled or revived by a deposit made by the liquidating partner of defendant firm in the plaintiff's bank.

The court below directed judgment for plaintiff, subject to the point of law reserved.

The necessary facts appear from the following opinion of the court below entering judgment non obstante veredicto.

In 1883, J. King McLanahan, Anthony S. Morrow, Thomas H. Lewis and John Manning formed a copartnership under the name and style of the Ætna Mining Company, for the purpose of mining and shipping ore from the lands of Samuel Isett, under a lease which they had previously obtained and which they had signed as individuals. There was no written agreement of copartnership, but it was agreed that Manning should superintend the mining and shipping of ore, and he was authorized to sign checks for the firm, and that Morrow should act as secretary and treasurer and keep the accounts of the firm. No active duties seemed to have been assigned to Lewis or McLanahan, but the latter attended to putting up the machinery and sold some ore for the firm, the proceeds of which he turned over to Morrow. The method of doing business was as follows: Manning furnished to Morrow statements of all ore shipped, and the latter received all remittances for the same and deposited them in the bank of Gardner, Morrow & Company, to the account of the Ætna Mining Company. Manning drew checks upon this account in payment of current expenses and liabilities and, in some instances, bills approved by Manning were paid by the bank and used as checks.

The exact date when shipments of ore ceased does not clearly appear from the evidence, but it seems to have been about August 1, 1886. From that time Mr. Manning was employed elsewhere. The account of the Ætna Mining Company with Gardner, Morrow & Company was then overdrawn for a large amount. Afterwards deposits were made as follows: August 2, $191.46; August 23, $123.39; August 28, $30.65; August 30, $50.57, September 2, $536; February 14, 1887, $782.95; March 2, 1888, $940.76; May 16, 1895, $101.81, and checks were drawn on the account during the balance of the year 1886, amounting to $1,037.34; during the year 1887, amounting to $1,736.07; during

the year 1888, amounting to $598.75.    The account of the Ætna
Mining Company with the bank of Gardner, Morrow & Company
was never balanced, either on the bank books or deposit books
of the firm, until May 15, 1895, when it then showed a balance
due the bank of $32,709.65, this including, however, interest
calculated to that date amounting to $11,760.    Among the
checks drawn in 1887 was one for $1,000 drawn by Mr. Mor-
row to Samuel Isett for royalties, and among those drawn in
1888 was one drawn by Mr. Morrow, in favor of the same party,
on April 3, for $500.    After the item last above mentioned, no
checks were drawn until September 28, 1889, when Mr. Mor-
row drew a check for $93.17 in payment of a judgment ob-
tained by Taylor & McCoy against the members of the firm for
coal furnished them while they were engaged in business.    The
deposits of $782.95 on February 14, 1887, and of $940.76 on
March 2, 1888, represented amounts received by Mr. Morrow
for accounts due from customers for ore shipped.    The deposit
of May 16, 1895, occurred as follows : On October 29, 1892,
Mr. Morrow received from the receiver of the Hollidaysburg
& Gap Iron Company a check for $101.81, payable to the Ætna
Mining Company, being the pro rata allowed by an auditor on
the account of the Ætna Mining Company against said firm.
This check Mr. Morrow held until May 16, 1895, when he in-
dorsed it and deposited it to the account of the Ætna Mining
Company in the bank of Gardner, Morrow & Company.    Dur-
ing the time that he held this check, so far as the evidence
shows, it was on his desk in the banking house of Gardner,
Morrow & Company.    On September 18, 1896, Gardner, Mor-
row & Company made an assignment for the benefit of their
creditors and, on January 16, 1897, this suit was brought by
the assignee under the act of April 14, 1838, A. S. Morrow be-
ing a member of both plaintiff and defendant firms.    The de-
fendants contended at the trial that the plaintiffs' right to
recover had been barred by the statute of limitations, and the
case hinged on the question as to whether or not the deposit
of $101.81, above referred to, by Anthony Morrow, tolled the
running of the statute or revived the debt if it was already
barred, the plaintiffs contending that Morrow was a liquidating
partner and therefore authorized to act for the other partners,
and the defendants denying that he had been appointed a liqui-

dating partner or acted as such with their knowledge and consent. The discussion of the questions raised by these contentions and the citations of authorities bearing thereon covered a very wide range, but the only conclusion arrived at by us therefrom that is material to the present issue is, that the law is well settled in Pennsylvania that, after the dissolution of a partnership, one partner cannot toll the running of the statute of limitations by an acknowledgment of the debt as against the others, unless he has been appointed by them a liquidating partner or acts as such with their knowledge, or has been authorized, either expressly or by implication, to do so for them.

For the purposes of this case, and a proper application of the law as above stated, we hold that the partnership was dissolved at the time the active operations ceased. It might possibly be held that, as to creditors, and for the purpose at least of closing up the business, the partnership continued until a later period, but this is not very material here, since by no possible expansion of the rules applicable to such cases could it be held to have continued until May, 1895, when the deposit relied upon in this case was made by Morrow. At the trial of this case our mind was more occupied in considering the other important legal propositions submitted than in considering whether the evidence bearing upon the authority of Morrow to act for the other partners after the dissolution was sufficient to warrant us in submitting it to the jury, and we therefore submitted that question, as appears from our general charge; but, in answer to the tenth point of defendants' counsel, we reserved, as a question of law, " whether or not there is sufficient evidence in the case of such authority in Anthony S. Morrow from the other partners, either express or implied, as would make the deposit of the money received from the Hollidaysburg & Gap Iron Company effectual to toll the running of the statute of limitations or revive the debt as against them, if already barred."

It is not claimed that proof has been furnished that Morrow was expressly selected as a liquidating partner, and, indeed, it is apparent from the evidence that he was not a liquidating partner in the technical and legal sense of that term. The assets after the suspension of the business of shipping ore consisted of some mules at the mines and some outstanding accounts for ore sold; the former were sold by McLanahan in the fall of 1886,

and it does not appear what became of the proceeds, and the accounts, to the extent at least referred to above, were paid to Mr. Morrow, and the proceeds deposited by him to the credit of the firm on their account with Gardner, Morrow & Company. The collection of these accounts was directly in line with the duties assigned to Mr. Morrow when the partnership was formed, and the deposit of the proceeds with Gardner, Morrow & Company was in accordance with his method of doing business before the firm ceased operations. There is no evidence that the other members of the firm had any knowledge of the collection by him of any of these accounts, nor of the disposition made by him of the proceeds. Manning paid a number of accounts against the firm after the firm ceased operations, by drawing checks on Gardner, Morrow & Company, and this was directly in line with the duties assigned to him when the partnership was formed. Morrow had drawn a number of checks on the account during the continuance of the business, but mostly for accounts approved by Manning, and to Isett for ore, based on the statements furnished to him by Manning of the amount of ore shipped. The whole number of checks drawn during the continuance of the business was over 1,100, and of these about fifty were drawn by Morrow. After the suspension of business, Morrow also drew a number of checks in payment of accounts, but there is no evidence that the other members of the firm knew of this. Indeed, Manning expressly denies that he had any knowledge of the checks given to Isett in payment of royalties after the shipment of ore had ceased, and in his testimony he repudiates these payments and denies the right of Morrow, at any time during the continuance of the business or after, to draw checks on the bank account of the firm, although Morrow in his testimony stated in a general way, that the other members of the firm knew of these payments of royalty. As late as February 9, 1887, Manning gave a check to Mr. Suckling for an account against the firm, Mr. Morrow having referred Mr. Suckling to him. The facts we have just mentioned, and many others developed in the testimony, seem to us to be entirely inconsistent with the allegation that Mr. Morrow was acting as a liquidating partner of the firm. The principal liability of the Ætna Mining Company was the account of Gardner, Morrow & Company now sued upon. There is no evidence that any of the

members of the firm, excepting Morrow, knew of this indebtedness until after the credit was entered by direction of Morrow of the $101.81. Manning, in his testimony, positively denied all knowledge of this indebtedness and gives his reasons for believing that they were free from debt or that if there was any indebtedness it was small.

Among other matters relied upon by the plaintiffs as evidence of implied authority in Morrow to act as a liquidating partner and knowledge on the part of the others that he was so acting, is the fact that they made demands on him for settlements; but a careful scrutiny of the testimony in this behalf makes it clear that this was because the duty had been assigned to him at the inception of the partnership to keep the accounts and handle the money, and because he was the only member of the firm able to advise the others as to the situation of their affairs. These conversations had no special reference to any duties performed by Morrow after the dissolution. This is apparent from all the testimony, especially from the testimony of Russ and Manning, and the rigid and ingenious cross-examination the latter was subjected to failed to make it appear otherwise, and this further appears from the testimony of Russ to the effect that Mr. Morrow's conversations with Lewis were in relation to his anxiety to get the account of Gardner, Morrow & Company against the firm adjusted rather than in relation to a settlement of the affairs of the Ætna Mining Company.

The plaintiffs also relied on the fact that Manning and Lewis expressly authorized Morrow to pay the judgment of Taylor & McCoy, but a careful reading of all the testimony in relation to this will show that this amounted to nothing more than an approval of the correctness of the claim, which was directly in line with Manning's duties, according to the testimony of all the partners. Indeed, Morrow never had authority to pay any account or claim without his approval; moreover, the members of the firm were jointly liable for the payment of this judgment, and there was nothing in the conversations with Manning and Lewis to indicate any intention on their part to authorize Morrow to incur new liability to pay this judgment by drawing a check on Gardner, Morrow & Company, or that they knew he was going to pay it in that way or did pay it in any way. Indeed, there is nothing to indicate otherwise than that they

thought he had funds belonging to the firm with which to pay it. This isolated instance, occurring in 1889, even when taken in connection with the other matters relied on, is insufficient to warrant a finding by a jury that Morrow was acting as a liquidating partner with the knowledge of his copartners, or from which it can be inferred that he was authorized to do an act, nearly six years afterwards, that would have the far-reaching effect claimed for it.

We may not have referred above to all the matters relied upon by the plaintiffs as tending to show an implied authority in Morrow to bind his copartners, nor have we referred to any of the circumstances relied upon by the defendants as tending to show otherwise. The few isolated acts done by him after the dissolution, knowledge of which has been traced to the other members of the firm or of which knowledge may be inferred, were not sufficient, as we view the case now, to carry the question of authority to the jury. In submitting this question to the jury at the time of the trial we had in mind the language used by Mr. Justice MERCUR, in Fulton v. The Central Bank of Pittsburg, 92 Pa. 112, which has been quoted approvingly in Campbell v. Floyd, 153 Pa. 90, and in other cases as follows : " The authority to act as a liquidating partner does not require an express and specific appointment. When one so acts with the knowledge of his late copartners, their permission may be presumed, and as to third persons, they may be bound by his acts," as well as the language used in the opinion delivered in Seigfried v. Ludwig, 102 Pa. 547, in relation to the proof required as to liquidating partners, as follows: " Express authority need not be proved. It may be found from the continued exercise of such powers with the knowledge and implied assent of the copartners." In this case the proof was not sufficient that Anthony Morrow " so acted with the knowledge of his late copartners, or, that there was any continued exercise of such powers with the knowledge and implied assent of the copartners." In conclusion, as to the law on this branch of the case, it may not be unprofitable to quote from the opinion of Mr. Justice GREEN, delivered in the case of Wilson v. Waugh, 101 Pa. 238 : " As we have seen by the decided cases, the power of one partner to bind another, after dissolution, by either an express or implied promise, is exceptional. The facts which give

rise to it must appear in any case where it is claimed to exist. If they do not appear it does not exist and the general rule of nonliability is applied and controls."

It follows from the above statement of our conclusions that we must direct a judgment for the defendants non obstante veredicto on the reservation contained in answer to defendants' tenth point, and the disposition of this question makes it unnecessary for us to consider the questions reserved in answer to the defendants' third, sixth and eighth points, although we would cheerfully do so if we could in such a manner as to obtain rulings in the appellate court in case our conclusions, as above stated, should not be affirmed. This we can only do by determining these questions in favor of the defendants, and this we cannot consistently do, because we have concluded from such examination as we have made that those points should have been denied by us. The question substantially raised by the defendants' eighth point, however, will be of such importance, in the event of a retrial of this case, that we deem it proper to give our views in relation to it, in order, if possible, to obtain an expression from the appellate court in case the entry by us of judgment for the defendants non obstante veredicto should not be sustained, because, if the defendants' contention in that point be sustained, it would be useless to order a venire facias de novo. This question involves the construction of the act of April 14, 1838.

The defendants' counsel, throughout the entire trial of the cause, objected to the admission of any evidence of acts or declarations by Anthony S. Morrow to the prejudice of his copartners, urging that the introduction of such evidence is prohibited by the proviso in the 1st section of the act of April 14, 1838, under which this suit was brought. The 1st section of the said act concludes as follows : " And the acts and declarations of the partner or persons so being of both the parties plaintiffs and defendants shall be evidence to affect each party, respectively, in like manner and to the same extent as the acts and declarations of the other partners, or persons plaintiffs or defendants, would affect the respective firms or parties, provided, That no act or declaration of the parties shall be given in evidence in his own favor, to the prejudice of others." The act of 1838 was passed to furnish a remedy where none existed before.

Prior to the passage of that act, a suit between two firms having a common member could only be instituted in the equity side of the court. In such a proceeding, it is clear that the acts and declarations of a partner common to both firms could be introduced in evidence to bind the other partners to the same extent that their acts and declarations could be admitted in evidence to bind him. Acts and declarations of one partner after dissolution are admissible to bind his copartners within the scope of authority conferred on him by them, and we cannot conceive that it was the intention of the legislature to change the law in this respect by the act of 1838; or, in other words, in giving a remedy, at common law not existing before, to change the rules of evidence. If Anthony Morrow was a liquidating partner, or if he had authority from the other members of the copartnership, either express or implied, to act for them, we do not think the plaintiff is prevented from introducing his acts and declarations in evidence by the proviso of the act of 1838. The power of a liquidating partner to bind his copartners has its foundation in authority given him either expressly or by implication, to act for them in the settlement of the partnership affairs, and if this be sufficiently proved, the fact that he is also a member of the plaintiff firm would not, of itself, exclude evidence of his acts. It might probably subject his declarations and acts to closer scrutiny, and it might be a reason for holding the parties to the strictest degree of proof required by law in a case like this, where the act of a partner, common to both firms, is set up as a bar to the statute of limitations. In Hepburn v. Curts, 7 Watts, 300, being the first case in which this act was construed by the Supreme Court, SERGEANT, J., says of it: "It thus furnishes a remedy where none existed before; and does so, in pending cases, without divesting any right, impairing any contract, etc. . . . Here (by this act of assembly) the rights of the parties are not touched; but an objection existed arising out of the nature of an action at common law which interposed a bar to the trial of right and objection which a court of equity does not allow to prevail, but, by means of the greater freedom and flexibility of its process, calls all parties before it and renders complete justice." Counsel for defendants rely on an expression of the justice referred to above as found in Tassey v. Church, 4 W. & S. 141, as follows: "It is true, as is con-

tended, the acts or declarations of Church after the dissolution, *being himself one of the plaintiffs*, would be no evidence to affect anybody but himself; but they are evidence for that purpose by the express terms of the act of assembly of April 14, 1838, authorizing a suit at common law by a firm of which one of the plaintiffs is a member, against another firm of which the same party is also a member." But, if we leave out the words underscored above by us, the language used is but a mere statement of the law as it existed before and after the passage of the act of 1838, and we see nothing in that case, or in any construction to be placed upon the law, to warrant the suggestion apparently conveyed by the language underscored as above of a change of the law by the act of 1838. We conclude that if the evidence in this case disclosed that Anthony Morrow was a liquidating partner, or that he had been authorized by the other partners to act for them, the act of 1838 would not be a bar to the introduction of evidence of his acts and declarations.

And now, the 27th day of February, A. D. 1899, the motion of defendants' counsel for judgment for defendants (J. King McLanahan, John Manning, James W. Lewis and Mary Lewis, administrators of Thomas H. Lewis, deceased) on the point reserved in answer to the defendants' tenth point non obstante veredicto is sustained, and it is directed that judgment be entered for said defendants non obstante veredicto.

Plaintiff appealed.

*Errors assigned* among others were (1) in entering judgment for defendants non obstante veredicto upon the point of law reserved in the answer to the defendants' tenth point for charge, which point and the answer thereto are as follows: " The evidence in this case is insufficient to establish any authority on the part of Anthony S. Morrow to bind his copartners, the defendants, by any act or declaration of his made after the date when the partnership of the Ætna Mining Company ceased to conduct and carry on the business for which it was organized, about August 1, 1886. *Answer:* We have submitted this question to you as a question of fact, but notwithstanding this submission, we reserve as a question of law whether or not there is sufficient evidence in the case of such authority in Anthony S. Morrow over the other partners, whether express or implied, as

would make the deposit of the money received from the Holli-
daysburg & Gap Iron Company effectual to toll the running of
the statute of limitations, or revive the debt as against them if
already barred, with the right to enter judgment non obstante
veredicto;" (2) in reserving as a question of law "whether or
not there is sufficient evidence in the case of such authority in
Anthony S. Morrow over the other partners, whether express
or implied, as would make the deposit of the money received
from the Hollidaysburg & Gap Iron Company effectual to toll
the running of the statute of limitations, or revive the debt as
against them if already barred, with the right to enter judgment
non obstante veredicto."

*O. H. Hewit*, for appellant.—The voluntary assumption of
the duties of a liquidating partner would be held binding on
his copartners, where this was done with their knowledge.

A liquidating partner may do such acts as will toll the run-
ning of the statute of limitations: Houser v. Irwin, 3 W. & S.
345; Wilson v. Waugh, 101 Pa. 233.

In Campbell v. Floyd, 153 Pa. 84, it was said: "It is the
right of each partner to have the assets of the firm applied to
the discharge of its debts, and the residue, if any, divided among
those entitled thereto; and it is the duty of those having cus-
tody of the assets to so apply them; they cannot in good faith
to their fellows run away and leave them. And when one, in
whose keeping the assets are, assumes the duty of liquidating
partner, good faith equally requires that the others shall hold
themselves bound by what is done, or object promptly and show
why it ought not to be done."

The form in which the alleged point of law was reserved
violated the accepted rules on this subject. If courts could
be permitted to pass upon the sufficiency of evidence, juries
well might be abolished. Not only the language of the res-
ervation but the admissions in the opinion of the court, concede
that the jury had before them at least some evidence to estab-
lish this feature of the plaintiff's case. It was not for the court
to decide whether it was sufficient to convince the jury: Win-
chester v. Bennett, 54 Pa. 510; Wilde v. Trainor, 59 Pa. 439;
Inquirer Printing Co. v. Rice, 106 Pa. 623; Yerkes v. Richards,
170 Pa. 346; Fisher v. Scharadin, 186 Pa. 565.

*Stevens, Owens & Pascoe, W. Horace Rose* and *J. Lee Plummer*, for appellees, were not heard.

PER CURIAM, May 23, 1899:

This suit, by the assignee of Gardner, Morrow & Company, bankers, etc., was brought to recover from the Ætna Mining Company, a partnership, the amount of an alleged overdrawn account. It is not denied that defendant company ceased to do business sometime in 1886, at which time the right of action on the claim in suit accrued. Inasmuch as the present action was not commenced until 1897, the statute of limitations, duly pleaded, was a bar to recovery, unless the statute was tolled or the debt revived. After defendant company ceased to do business in 1886, a number of deposits were made in 1887 and 1888 in Gardner, Morrow & Company's Bank, and checks were drawn thereon during the same years. No further dealings were had between these parties after 1888, until May 16, 1889, when $101.81, a dividend due defendant company from the receiver of the Hollidaysburg & Gap Iron Company, one of its creditors, was deposited in Gardner, Morrow & Company's Bank by Anthony S. Morrow, who was a member of the banking firm and also of the firm defendants. Plaintiff undertook to show that Morrow was acting as liquidating partner with the knowledge of the other partners. That question was submitted to the jury by the learned president of the 47th judicial district, who specially presided at the trial, but he reserved the question of law, whether the evidence was sufficient to make the deposit in 1895 operate as a revival of the debt, with the right to enter judgment non obstante veredicto. In his opinion entering judgment for the defendants he reviewed the evidence at some length, and showed its insufficiency to establish the position contended for by the plaintiff.

Without unnecessarily consuming time by referring in detail, either to the facts or the evidence, we think, for the reasons given by the learned judge specially presiding, that he committed no error, either in reserving the question of law or in afterwards entering judgment thereon in favor of the defendant, non obstante veredicto. It therefore follows that both specifications of error should be overruled.

Judgment affirmed.